488 F.2d 1325
 160 U.S.App.D.C. 1, 3 P.U.R.4th 309
 TRANSCONTINENTAL GAS PIPE LINE CORPORATION, Petitioner,
v.
FEDERAL POWER COMMISSION, Respondent,
The Peoples Gas Light and Coke Company et al.
PUBLIC SERVICE COMMISSION FOR the State of NEW YORK, Petitioner,
v.
FEDERAL POWER COMMISSION, Respondent,
The Brooklyn Union Gas Company et al.
ASSOCIATED GAS DISTRIBUTORS, Petitioners,
v.
FEDERAL POWER COMMISSION, Respondent,
Northern Illinois Gas Company et al.
CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Petitioner,
v.
FEDERAL POWER COMMISSION, Respondent,
Northern Illinois Gas Company et al., Intervenors.
 Nos. 73-1410, 73-1412, 73-1558, 73-1575.
 United States Court of Appeals,
District of Columbia Circuit.
Argued Oct. 31, 1973.
Decided Nov. 12, 1973.
Rehearing Denied Nov. 21, 1973.
 
 Thomas F. Ryan, Jr., Washington, D. C., with whom Robert G. Hardy, Washington, D. C., and Lawrence H. Gall, Houston, Tex., were on the brief, for Transcontinental Gas Pipe Line Corp.
 Richard A. Solomon, Washington, D. C., with whom Peter H. Schiff, Gen. Counsel, Albany, N. Y., was on the brief for Public Service Commission for the State of New York. Michael H. Rosenbloom, Washington, D. C., also entered an appearance for the Public Service Commission for the State of New York.
 Frederick Moring, and Richard G. Morgan, Washington, D. C., were on the briefs for Associated Gas Distributors.
 William I. Harkaway, Washington, D. C., and Robert A. Froehlich, New York City, were on the briefs for Consolidated Edison Co. of New York, Inc., Petitioners in No. 73-1575.
 William M. Sawyer, Atty., Federal Power Commission with whom Leo E. Forquer, Gen. Counsel, and George W. McHenry, Jr., Sol., were on the brief, for respondent.
 
 
 1
 Paul E. Goldstein, Chicago, Ill., was on the brief for Intervenor, Peoples Gas Light and Coke Co. and Natural Gas Pipeline Co. of America.
 
 
 2
 Barbara M. Gunther, and Joseph P. Stevens, Brooklyn, N. Y., were on the brief for the Intervenor, The Brooklyn Union Gas Co. in Nos. 73-1410 and 73-1412.
 
 
 3
 Mark L. Goldstein, Chicago, Ill., was on the brief for the Intervenor, City of Chicago.
 
 
 4
 J. Stanley Stroud, Chicago, Ill., was on the brief for the Intervenor, Northern Illinois Gas Co.
 
 
 5
 Thomas P. Hamill, Houston, Tex., was on the brief for the Intervenor, Mobile Oil Corp.
 
 
 6
 Philip R. Ehrenkranz, and Carroll L. Gilliam, Washington, D. C., also entered an appearance for Intervenor, Mobil Oil Corp.
 
 
 7
 William A. Sackmann, Geneva, Switzerland, entered an appearance for Intervenor, Marathon Oil Co.
 
 
 8
 Richard F. Generelly, Washington, D. C., entered an appearance for Intervenor, Monsanto Co.
 
 
 9
 Before WRIGHT, ROBINSON and MacKINNON, Circuit Judges.
 
 PER CURIAM:
 
 10
 This case involves petitions to review orders of the Federal Power Commission (the Commission) granting abandonment of natural gas supplies in the context of a critical nation-wide fuel shortage. As such, it raises important issues relating to the proper standard to be applied in natural gas abandonment proceedings for the foreseeable future. All parties to this controversy agree that an early determination of the issues is necessary and this court has acted accordingly.[1]I
 
 
 11
 The facts of this case are fully stated in the Presiding Examiner's Initial Decision;[2] we only summarize here those necessary to understand the precise issues decided. Petitioner, Transcontinental Gas Pipe Line Corporation (Transco), and intervenor, Natural Gas Pipeline Company of America (Natural), are natural gas pipelines engaged in the transportation and sale of natural gas in interstate commerce.[3] Transco and Natural have purchased natural gas production from the La Gloria field area in Texas since the late 1940's and early 1950's respectively. In the middle 1950's, the La Gloria producers contended they could not continue to meet the requirements of both companies and still have adequate gas for other needs. For this reason the producers attempted to discontinue service to Natural by invoking certain "escape clauses" in their contracts. Pending court review of a Commission decision[4] disallowing the proposed discontinuance, the producers and Natural agreed upon a settlement of the controversy. The settlement agreement, as approved by the Commission,[5] provided for a substantial reduction in deliveries to Natural and the continued delivery of 81,000 Mcf per day[6] to Transco until its contract with the producers expired in 1971. The quid pro quo for acceptance by Natural of the reduced deliveries was a contract with the producers that dedicated all the natural gas reserves in the La Gloria Field to Natural and required the producers to seek abandonment of deliveries of the 81,000 Mcf per day to Transco when its contract expired.[7] Although Transco was not a party to the settlement agreement, it had intervened in the original proceeding before the Commission.
 
 
 12
 In early 1971 after Transco's contract expired, the La Gloria producers filed applications with the Commission to abandon sales to Transco. These applications were consolidated and hearings were held in the fall of 1971. The Commission, reversing the decision of the Presiding Examiner, granted the applications for abandonment and certificated the sale of the abandoned gas to Natural. Thus Natural presently is receiving the 81,000 Mcf per day formerly delivered to Transco. Upon denial of its request for a rehearing before the Commission, Transco filed the instant petitions for review with this court. We vacate the orders of the Commission, restore the parties to the status quo ante, and remand the case to the Commission.
 
 II
 
 13
 Based upon an extensive and careful review of the evidence, the Presiding Examiner found, inter alia, that Transco had greater need for the La Gloria field gas than Natural. Accordingly, he denied the application for abandonment pursuant to the comparative need standard enunciated by this court in Michigan Consolidated Gas Co. v. FPC, 108 U.S.App.D.C. 409, 283 F.2d 204, cert. denied, 364 U.S. 913, 81 S.Ct. 276, 5 L.Ed. 2d 227 (1960). On review, the Commission reversed the Examiner's decision, ordered abandonment and certificated sale of the gas to Natural. In its decision the Commission stated that the comparative need standard[8] was not appropriate in the context of this case, which involves: (1) a critical natural gas shortage in all areas of the country, (2) the expiration of Transco's contract with the La Gloria producers, and (3) Natural's contract rights to the gas under the 1958 Commission approved settlement agreement. For these reasons the Commission formulated a new standard that would give controlling weight to the settlement agreement absent "compelling proof" of countervailing "unequivocal public necessity."
 
 III
 
 14
 Section 7(b) of the Natural Gas Act, 15 U.S.C. Sec. 717f(b) (1970), provides that abandonment of natural gas facilities or services subject to the Commission's jurisdiction can be granted only "after due hearing, and a finding by the Commission . . . that the present or future public convenience or necessity permit such abandonment." In Michigan Consolidated, supra at 419, 283 F.2d at 214, this court, in considering the criteria for abandonment under Sec. 7(b), recognized two important principles: (1) a pipeline which has obtained a certificate of public convenience and necessity to serve a particular market has "an obligation, deeply embedded in the law, to continue service," and (2) the burden of proof is on the applicant for abandonment to show that the "public convenience and necessity" permits abandonment, that is, that the public interest "will in no way be disserved" by abandonment.
 
 
 15
 The fundamental tenets established by Michigan Consolidated are that the public interest is the ultimate criterion under Sec. 7(b) and that all factors relevant to the determination of which course of action best promotes the overall public interest must be fully considered. The Commission there proposed, and this court accepted, a comparative needs test which balanced the relative needs of the competing pipelines and their ultimate consumers as the principal index of the public interest.
 
 
 16
 Against these principles of statutory and case law, it is clear that the Commission's orders cannot stand. At bottom, the Commission's decision stands for the simple proposition that where all parties need contested gas supplies the party having a contractual right to such gas will prevail. This proposition possesses the alluring qualities of simplicity and precision; indeed, it seems to have so mesmerized the Commission that it abdicated its statutory responsibility to guarantee that the overall public interest "will in no way be disserved" by abandonment. Simply stated, the Commission apparently failed to perceive that the fact that all need gas does not mean that all need it equally.[9] The approach thus taken failed to consider adequately and fully all the factors relevant to an intelligent determination of the overall public interest.
 
 
 17
 The Commission also erred in according dispositive weight to private, albeit Commission approved,[10] contractual arrangements absent a showing of countervailing "unequivocal public necessity."[11] The Commission essentially argues that failure to honor long term gas acquisition contracts would be "disastrous since no pipeline would be able to plan for the future."[12] Clearly there are advantages to insuring as great certainty in gas acquisition plans as is possible. Moreover, if such plans and contracts are not given significant weight, then a pipeline in Transco's position might not be inclined, or at least would not have as great an incentive, to seek new sources of supply to replace those lost upon expiration of its contracts. Thus it is conceded that private, long term contracts, at least where they are part of a Commission approved settlement agreement, must be accorded significant weight in the determination of the overall public interest. But to argue that anything less than controlling weight would be "disastrous" grossly overstates the case. Rigid deferral to contractual arrangements without a searching inquiry into other factors relevant to the public interest as required by Sec. 7(b) simply is an inadequate means to assure vindication of the transcendant interests of the public.
 
 IV
 
 18
 It is appropriate to reiterate here the principle that guides our review of abandonment orders as stated in Michigan Consolidated:
 
 
 19
 Where, as here, a regulatory agency has ignored factors which are relevant to the public interest, the scope of judicial review is sufficiently broad to order their consideration. These limits are not to be confused with the narrower ones governing review of an agency's conclusions reached upon proper consideration of the relevant factors.
 
 
 20
 Supra, 108 U.S.App.D.C. at 431, 283 F. 2d at 226.
 
 
 21
 We contemplate on remand, therefore, a searching and comprehensive inquiry by the Commission into all factors relevant to determining the overall public interest in this abandonment proceeding. For this purpose it will doubtless be necessary to supplement the record with additional evidence with respect to these factors. Primary importance must be given to a broadly conceived[13] comparison of the needs of the two natural gas systems and the public markets they serve. Additionally, the Commission should consider the environmental effects of its decision (See Arizona Public Service Co. v. FPC, 157 U.S.App.D.C. 272, 483 F.2d 1275 (1973)), the economic effect on the pipelines and their consumers, the presumption in favor of continued service and the relative diligence of the respective pipelines in providing for adequate natural gas supplies.[14] As discussed previously, the Commission should also accord significant weight to Natural's contract rights that resulted from the 1958 Commission approved settlement agreement. For the purpose of judicial review it is, of course, essential that the Commission's findings with respect to the factors it considered in determining the public interest be apparent from its opinion.
 
 
 22
 We recognize that the balancing process we impose upon the Commission is a complex one, but we perceive no acceptable alternative that would guarantee that the public interest "will in no way be disserved" in abandonment proceedings. Accordingly, the orders of the Commission are vacated, the parties are restored to the status quo ante,[15] and the case is remanded to the Commission for further proceedings not inconsistent with this opinion.
 
 
 23
 So ordered.
 
 
 24
 On Motions for Clarification and Rehearing and for Recall of
 
 Mandate and Stay of Reissuance of Mandate
 ORDER
 
 25
 On consideration of the petitions for clarification and for rehearing and of the motions for recall of mandate and for stay of reissuance of mandate, it is
 
 
 26
 Ordered by the Court that the aforesaid petition for clarification is granted and the remaining motions are denied in accord with the Per Curiam opinion of this Court attached hereto, to be published at a later date.
 
 PER CURIAM:
 
 27
 Intervenor Natural Gas Pipe Line Company of America, in an emergency motion, has petitioned this court to clarify the opinion and order in the above captioned case, and to direct the Federal Power Commission on remand to allocate equitably the remaining supplies of natural gas in the La Gloria Field pending final disposition. It has also filed a petition for rehearing, a motion for recall of mandate and for stay of reissuance of mandate pending action on petition for rehearing. We clarify the opinion and order as hereinafter set forth but decline to enter any further directive to the Federal Power Commission.
 
 
 28
 The language of the opinion and order "the parties are restored to the status quo ante," as amplified by note 15, means that all parties are now restored to the respective daily volumes of natural gas to which they would have been entitled absent the grant of abandonment.
 
 
 29
 with respect to p. 1330, footnote 15 is stricken and the following is inserted in lieu thereof:
 
 
 30
 The petition for rehearing, the motion to recall mandate and for stay of reissuance of mandate pending action on petition for rehearing are all denied.
 
 
 31
 Judgment accordingly.
 
 
 
 [1]
 Scheduling of oral argument in this case has been expedited twice and the opinion rendered expeditiously because of the urgency for a speedy decision
 
 
 [2]
 Hilda B. Weinert, 49 FPC ---- (June 2, 1972) (Presiding Examiner's Initial Decision); J.A. at 55
 
 
 [3]
 Transco serves the Atlantic Seaboard, including New York City; Natural serves the Midwest, including Chicago. Id
 
 
 [4]
 Argo Oil Corp., 15 FPC 622 (1956)
 
 
 [5]
 Argo Oil Corp., 20 FPC 208 (1958)
 
 
 [6]
 [T]he average customer using gas for winter residential space heating in the market sand, c = cubic, f = feet, d (M = thousand, c = cubic, f = feet, d = day)
 Hilda B. Weinert, 49 FPC ----, ---- (June 2, 1972) (Presiding Examiner's Initial Decision); J.A. at 57. Thus the 81,000 Mcf per day of natural gas contested in this case is sufficient to meet the needs of approximately 54,000 residential households.
 
 
 [7]
 Thus, if abandonment were approved, Natural would receive the volumes of natural gas formerly delivered to Transco
 
 
 [8]
 In its Order Denying Rehearing and Partial Stay, J.A. at 151, 152, the Commission stated that the comparative space heating saturation test employed in Michigan Consolidated is not appropriate to the facts of this case. Although the Commission failed to explain why this is so, it erred more fundamentally in not recognizing that the public interest requires a more broadly conceived comparison of need than it made in this proceeding. See note 13 and accompanying text, infra
 
 
 [9]
 In the instant proceeding, both pipelines are in short supply of natural gas and each is rendering less than full service to its customers. The loss of this gas to either pipeline will result in a diminution of its ability to continue even current levels of service. Under these circumstances, we find no showing of unequivocal public necessity for abrogating the contracts of the parties
 Hilda B. Weinert, 49 FPC ----, ---- (Opinion No. 655, March 21, 1973); J.A. at 107, 118. The Commission never adequately refuted the Examiner's finding that Transco had the greater need for the natural gas.
 
 
 [10]
 A finding by the Commission that a settlement resolving an immediate controversy would be in the public interest in 1958 cannot be construed to be sufficiently binding to preclude or restrict in any sense a new and comprehensive determination of the public interest as it exists in 1973. Indeed, the Commission itself apparently recognized this in its order approving the 1958 settlement:
 Nothing contained herein shall be construed as a waiver of the requirements of Section 4 or 7 of the Natural Gas Act, or of the Commission's regulations thereunder, and is without prejudice to any findings or orders which have been or may hereafter be issued by the Commission in any proceeding now pending or hereafter instituted by or against any of the parties to these proceedings.
 Argo Oil Corp., 20 FPC 208, 210 (1958).
 
 
 [11]
 The Commission focused on language quoted out of context from Permian Basin Area Rate Cases, 390 U.S. 747, 822, 88 S.Ct. 1344, 1389, 20 L.Ed.2d 312 (1968):
 The regulatory system created by the [Natural Gas] Act is premised on contractual agreements voluntarily devised by the regulated companies; it contemplates abrogation of these agreements only in circumstances of unequivocal public necessity.
 Permian, of course, involved rate regulation and did not consider the sanctity of private contracts in the context of abandonment proceedings under Sec. 7(b). The situation confronting the Court in Permian involved producers who were dissatisfied with their contract prices which were not as high as would be permissible under the maximum area rates subsequently fixed by the Commission. The decision holds that such "improvident bargains" could not be relieved absent injury to the public interest, such as impaired ability to maintain adequate service to the consuming public.
 In the instant abandonment proceeding, loss of the La Gloria gas will directly result in further curtailment of existing service to present customers of the losing pipeline. The public interest is jeopardized and "unequivocal public necessity" is demonstrated whenever private contracts substantially impair the ability of a pipeline to maintain adequate levels of service to its customers. In this situation, contract rights should be considered as but one of the important factors to be weighed in the balancing process set forth in this opinion.
 
 
 [12]
 Hilda B. Weinert, 49 FPC ----, ---- (Opinion No. 655, March 21, 1973); J.A. at 107, 117
 
 
 [13]
 The Presiding Examiner noted that the Commission staff had proposed eleven criteria for comparing the needs of the two pipeline systems. Several of these were not considered because of insufficient evidence, difficulty of meaningful comparison or their speculative nature. Hilda B. Weinert, 49 FPC ----, ---- (June 2, 1972) (Presiding Examiner's Initial Decision); J.A. at 55, 95. The Commission, of course, is not bound by these proposals, but it should exercise its expertise to insure that all relevant and meaningful indices of comparative need are considered
 
 
 [14]
 A certain tension is created by the fact that the less diligent pipeline often might, by definition, have greater need for the contested gas supplies. Nevertheless, the more diligent pipeline should be favored if such preferential treatment would not be inconsistent with the overriding public interest in a particular case
 
 
 [15]
 Delivery of the 81,000 Mcf per day of natural gas to Transco shall be restored as quickly as possible
 Delivery of the daily volumes of natural gas to which Transco is entitled under the status quo ante shall be restored as quickly as possible.