575 F.2d 67
 25 P.U.R.4th 161
 GULF OIL CORPORATION, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Tennessee Gas Pipeline Company, a Division of Tenneco Inc.,
Texas Eastern Transmission Corporation, Northern Illinois
Gas Company, New England Customer Group Bay State Gas
Company, the Berkshire Gas Company, Blackstone Gas Company,
Boston Gas Company, Commonwealth Gas Company, Concord
Natural Gas Corporation, the Connecticut Gas Company,
Connecticut Natural Gas Corporation, Fitchburg Gas and
Electric Light Company, Gas Service, Inc., Granite State Gas
Transmission, Inc., the Hartford Electric Light Company,
Haverhill Gas Company, City of Holyoke, Massachusetts Gas
and Electric Department, Lowell Gas Company, Manachester Gas
Company, the Southern Connecticut Gas Company, Valley Gas
Company, City of Westfield Gas and Electric Light
Department, Michigan Wisconsin Pipe Line Company, the
Peoples Gas Light and Coke Company and Algonquin Gas
Transmission Company, Intervenors.
 No. 77-1893.
 United States Court of Appeals,
Third Circuit.
 Argued March 31, 1978.
Decided April 17, 1978.
 
 B. James McGraw, A. Randall Friday, Gulf Oil Corp., Houston, Tex., Carroll L. Gilliam, Keith R. McCrea, Craig W. Hulvey, Washington, D. C., for petitioner Gulf Oil Corp.; Grove, Jaskiewicz, Gilliam & Cobert, Washington, D. C., of counsel.
 Robert R. Nordhaus, Gen. Counsel, Philip R. Telleen, M. Frazier King, Jr., Federal Energy Regulatory Commission, Washington, D. C., for respondent.
 
 
 1
 Leland F. Cadenhead, Lilyan G. Sibert, John S. Anderson, Tennessee Gas Pipeline Co., Jeron L. Stevens, Scott E. Rozzell, Baker & Botts, Houston, Tex., for Tennessee Gas Pipeline Co., a Division of Tenneco Inc.
 
 
 2
 Jack D. Head, James W. McCartney, Judy M. Johnson, Vinson & Elkins, Houston, Tex., for Texas Eastern Transmission Corp.
 
 
 3
 John W. Glendening, Jr., David H. Martin, Glendening & Schmid, Washington, D. C., for the New England Customer Group.
 
 
 4
 Richard J. Flynn, Frederic G. Berner, Jr., G. Paul Moates, Sidley & Austin, Washington, D. C., for Michigan Wisconsin Pipe Line Co.; Charles V. Shannon, Shannon & Morley, Washington, D. C., of counsel.
 
 
 5
 Joseph M. Wells, Paul E. Goldstein, Arthur S. Kallow, Constance DeYoung, Chicago, Ill., for the Peoples Gas Light and Coke Co.
 
 
 6
 Before ALDISERT, GIBBONS and WEIS, Circuit Judges.OPINION OF THE COURT
 
 
 7
 ALDISERT, Circuit Judge.
 
 
 8
 Gulf Oil Corporation petitions for review of orders and opinions of the Federal Energy Regulatory Commission[1] denying its application to abandon sales of natural gas to Tennessee Gas Pipeline Company. Because we determine that the Commission's decision was neither an abuse of, nor in excess of, its authority, and that the factual bases of its orders are supported by substantial evidence, we affirm.[2]
 
 
 9
 Gulf entered into three contracts with Tennessee for the sale of natural gas for twenty year periods, ending in the latter months of 1976. Gulf's obligation to continue to deliver gas to Tennessee, however, was not limited by the terms of the parties' contracts; rather, it extends until such time as abandonment has been approved by the Commission. See Sunray Mid-Continent Oil Co. v. FPC, 364 U.S. 137, 80 S.Ct. 1392, 4 L.Ed.2d 1623 (1960). Near the time the contracts were to expire, Gulf applied to abandon the service pursuant to § 7(b) of the Natural Gas Act, 15 U.S.C. § 717f(b).[3]
 
 
 10
 The major ground put forth in support of abandonment is that Gulf needs the reserves currently being used to supply Tennessee in order to meet its obligations under a warranty contract for sale of gas to Texas Eastern Transmission Corp. That contract, entered into in 1964, was the subject of an earlier action in which the Commission required that Gulf perform at levels up to 625,000 mcf (thousand cubic feet) per day as provided in the contract and approved in the certificate of public convenience. That order was upheld by this court in Gulf Oil Corp. v. FPC, 563 F.2d 588 (3d Cir. 1977) (Texas Eastern case).
 
 I.
 
 11
 The Commission held a full evidentiary hearing on Gulf's application to terminate sales to Tennessee, in order to determine whether, in the language of § 7(b), "the present or future public convenience or necessity permit such abandonment." 15 U.S.C. § 717f(b). On February 23, 1977, the presiding hearing examiner issued his Initial Decision denying the proposed abandonment.
 
 
 12
 In reviewing the hearing examiner's Initial Decision, the Commission examined the appropriateness of the proposed abandonment in light of the criteria suggested by Transcontinental Gas Pipe Line Co. v. FPC, 160 U.S.App.D.C. 1, 488 F.2d 1325 (1973), cert. denied sub nom. Natural Gas Pipeline Co. v. Transcontinental Gas Pipeline Corp., 417 U.S. 921, 94 S.Ct. 2629, 41 L.Ed.2d 226 (1974) (the La Gloria Field case), in which the court determined:
 
 
 13
 Primary importance must be given to a broadly conceived comparison of the needs of the two natural gas systems and the public markets they serve. Additionally, the Commission should consider the environmental effects of its decision, . . . the economic effect on the pipelines and their consumers, the presumption in favor of continued service and the relative diligence of the respective pipelines in providing for adequate natural gas supplies.
 
 
 14
 488 F.2d at 1330 (footnotes and citation omitted).
 
 
 15
 In its Opinion No. 799, after determining that the record was inadequate for a determination of the pipelines' comparative long-term needs, the Commission noted that there are public interest considerations present here which go beyond a strict comparative needs analysis. These included increased costs to Tennessee's customers which would result from the costs incurred in replacing its supply of natural gas, and a net loss of natural gas being made available to the interstate market. Significantly, the Commission considered, and accepted, the crucial factual predicate that Gulf does not need the gas currently supplied to Tennessee in order to meet its obligations to Texas Eastern. This finding had several bases, including Gulf's own projections of its delivery capabilities; the Commission's determination that Gulf did not need a "cushion" of 125,000 mcf per day in excess of the 625,000 mcf per day contractual level in order, as it claimed, to ensure delivery despite the possible occurrence of events of force majeure ;[4] and rejection of the Gulf contention that it is only obligated to supply natural gas from fields located in the contract area.
 
 
 16
 On the basis of these findings, the Commission took the position that the proposed abandonment would not serve the public interest, and it therefore denied Gulf's application. Gulf's subsequent petition for rehearing was denied by the Commission on July 6, 1977, in Opinion No. 799-A.
 
 II.
 
 17
 The proper role of this court in reviewing the order of the Federal Energy Regulatory Commission is circumscribed by the teachings of the Supreme Court in the Permian Basin Area Rate Cases, 390 U.S. 747, 791-92, 88 S.Ct. 1344, 1373, 20 L.Ed.2d 312 (1968):
 
 
 18
 First, (the reviewing court) must determine whether the Commission's order, viewed in light of the relevant facts and of the Commission's broad regulatory duties, abused or exceeded its authority. Second, the court must examine the manner in which the Commission has employed the methods of regulation which it has itself selected, and must decide whether each of the order's essential elements is supported by substantial evidence. . . . The court's responsibility is not to supplant the Commission's balance of these interests with one more nearly to its liking, but instead to assure itself that the Commission has given reasoned consideration to each of the pertinent factors.[5]
 
 A.
 
 19
 Considering first whether the Commission abused or exceeded its authority, we observe that the Commission's "regulatory duty" in considering Gulf's abandonment application was to determine whether "the present or future public convenience or necessity permit such abandonment". 15 U.S.C. § 717f(b). The Commission evaluated the effect of the proposed abandonment on the interstate gas market, emphasized the price and limited availability of substitute gas, and specifically examined the effect of a discontinuance of service to Tennessee.
 
 
 20
 We cannot agree with Gulf that in addressing these considerations the Commission ignored the comparative needs analysis prescribed by La Gloria Field, supra. Far from disregarding this analysis, the Commission determined that Texas Eastern had comparatively less need for the gas in question because it was guaranteed its contractual level regardless of the source, whereas Tennessee had no such guarantee and no readily available substitute gas supply. And although in Opinion 799 the Commission stated that the record was inadequate for a determination of the pipelines' comparative long-term needs, in Opinion 799-A it articulated more aptly its disposition of this aspect:
 
 
 21
 Gulf argues that these reserves will be needed at some time in the future for it to meet its obligations to Texas Eastern. While pointing to anticipated declines in deliveries from older fields and reductions in reserve estimates dedicated to the warranty contract, Gulf has made no evidentiary showing as to the extent of these anticipated reductions. Gulf has made no showing that it cannot develop or acquire reserves that would enable it to meet its daily delivery obligations should these anticipated reduced deliveries become a fact.
 
 
 22
 Clearly, in effectuating its statutory duty, the Commission can approve abandonment applications only upon a sufficient showing, by the applicant, that the public interest will be served by such abandonment. See Michigan Consolidated Gas Co. v. FPC, 108 U.S.App.D.C. 409, 419, 283 F.2d 204, 214, cert. denied, Panhandle Eastern Pipe Line Co. v. Michigan Consolidated Gas Co., 364 U.S. 913, 81 S.Ct. 276, 5 L.Ed.2d 227 (1960). Under these circumstances, we agree, using the guidance of the Permian Basin Area Rate Cases, supra, that "in light of the relevant facts and of the Commission's broad regulatory duties," the Commission did not abuse or exceed its authority in denying Gulf's application. Charged in section 7(b) with determining the "public convenience or necessity", the Commission properly considered the pipelines' comparative needs as well as the relevant public interest considerations.
 
 B.
 
 23
 The findings of fact underlying the order also withstand Gulf's attack, because we determine that they are based upon substantial evidence. A linchpin of the Commission's analysis is that Gulf is able to supply Tennessee as well as Texas Eastern. Gulf's own representations regarding its capacity to perform under the Texas Eastern contract provide support for this finding. We note that this crucial finding also rested upon the Commission's rejection of Gulf's contention that it is only obligated to supply natural gas from fields located in or near the contract area. Gulf pressed similar contentions on appeal, stressing in its briefs that Tennessee has no specific right to the reserves at issue, while Gulf and Texas Eastern have "superior rights" under their contract. At oral argument, Gulf again cited the "unique" nature of the Gulf-Texas Eastern contract.
 
 
 24
 We find this to be a curious argument. First, it is Texas Eastern which has no specific "right" to gas from the fields in question. The Gulf-Texas Eastern warranty contract did not specify particular fields from which the committed gas would be obtained. The parties could have called for the dedication of specific reserves, but having failed to do so, they cannot call upon the Commission to contrive a provision in this regard. Secondly, we cannot lose sight of the posture of this action: it is a petition for abandonment. Although the contractual status of the concerned parties will be relevant to the extent that it defines particular rights and obligations between those parties, the Commission's task is to view the abandonment application in the broader context of the public interest. It cannot, and here it did not, disregard its statutory obligation to consider the "public convenience and necessity" merely to vindicate an alleged contractual obligation which was not provided for by the parties.
 
 
 25
 The Commission's further findings regarding the effects of abandonment upon prices and supply in the interstate market are supported by evidence in the record regarding the nature and extent of Gulf's contractual obligations to Texas Eastern and the differing rates Gulf would be able to charge under extant contracts or new natural gas rates.
 
 C.
 
 26
 We are mindful of the limitations imposed upon Gulf by the Federal Energy Regulatory Commission: not only is the obligation to supply Texas Eastern with substantial quantities of natural gas at relatively low rates to be enforced, but Gulf's obligations to other customers may not be rearranged for the private purpose of easing the burdens of this contractual commitment. An undertaking between two private entities that requires a certificate of public convenience from the Commission to effectuate its terms does not possess the flexibility of a purely private contract; its terms, including termination provisions, must always yield to lawful determinations of the regulatory agency that has initially permitted the provisions of the contract to become effective. But it bears emphasis that it is the Commission, and not this court, that is charged under § 7(b) of the Natural Gas Act with the duty to determine whether abandonment of service is consistent with the present or future public convenience or necessity. Our role is simply to ensure that the duty has been discharged in the manner contemplated by Congress and the courts. We determine that it has been so discharged.[6]
 
 
 27
 The order of the Commission will be affirmed.
 
 
 
 [1]
 The Federal Power Commission, originally named as respondent in this action, was succeeded by the Federal Energy Regulatory Commission pursuant to the Department of Energy Reorganization Act. See 42 U.S.C.A. § 7101 et seq. (West Supp.1977). Intervenors in this action include Tennessee Gas Pipeline Co., Texas Eastern Transmission Corp., Northern Illinois Gas Co., New England Customer Group, Michigan Wisconsin Pipe Line Co., The Peoples Gas Light and Coke Co., and Algonquin Gas Transmission Co
 
 
 [2]
 Several other applications have been filed by Gulf seeking authorization to abandon service to other pipelines and arguing similarly that diversion of gas supplies is necessary to fulfill Gulf's obligations under the warranty contract with Texas Eastern. By agreement among Gulf, the pipelines, and the Commission, the outcome of the instant proceeding will control the disposition of those applications
 
 
 [3]
 § 717f. Construction, extension, or abandonment of facilities; certificate of convenience and necessity; condemnation proceedings
 (b) No natural-gas company shall abandon all or any portion of its facilities subject to the jurisdiction of the Commission, or any service rendered by means of such facilities, without the permission and approval of the Commission first had and obtained, after due hearing, and a finding by the Commission that the available supply of natural gas is depleted to the extent that the continuance of service is unwarranted, or that the present or future public convenience or necessity permit such abandonment.
 
 
 [4]
 Under the terms of the Gulf-Texas Eastern contract, such events would excuse non-performance. See generally our discussion in Gulf Oil Corp. v. FPC, supra, 563 F.2d at 601-02
 
 
 [5]
 Upon review, we are specifically empowered to "affirm, modify, or set aside (the Commission's) order in whole or in part," section 19(b) of the Natural Gas Act of 1968, 15 U.S.C. § 717r (1970), and the scope of our review is defined by the Administrative Procedure Act, 5 U.S.C. § 706 (1970)
 
 
 [6]
 We have considered, and find no merit in, Gulf's additional contentions that the Commission applied decisional criteria different from those announced in its order setting Gulf's application for hearing, thus violating due process; that the delays encountered by Gulf in seeking to deliver gas to Texas Eastern are events of force majeure under the Gulf-Texas Eastern contract; and that the Commission relied on materials outside the record, thus depriving Gulf of due process